UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **NICOLE LEE NOKES** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 15-3354 |
| ) | |
| **THE CAVALRY FIRM** ) | |
| ) | |
| Defendant. ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Plaintiff Nicole Lee Nokes' Motion in Support of Default Judgment on Sum Certain (d/e 18). Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded $1,000 in statutory damages, $0 in punitive damages, and $3,803 in attorney's fees and costs.

**I. BACKGROUND**

On December 21, 2015, Plaintiff Nicole Lee Nokes filed a Complaint against Defendant The Cavalry Firm in this Court (d/e 1). Plaintiff claimed that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by: (1) using false statements

and threats in connection with the collection of a debt (15 U.S.C. §§ 1692e(2) and 1692f(1)); (2) failing to advise Plaintiff that Defendant is a debt collector (§ 1692e(11)); and (3) failing to send Plaintiff a "Dunning" letter (§ 1692g-g(a)(5)).[1] Plaintiff further claimed that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by: making false statements and threats in an attempt to collect a debt.

Service was properly made on F. Gutierrez ,of Defendant's Registered Agent, CSC Services of Nevada, Inc., on April 14, 2016 (d/e 10).  Defendant failed to plead, answer, or otherwise defend the action.  Plaintiff requested entry of default on (d/e 12), and United States Magistrate Judge Schanzle-Haskins ordered the entry of default on May 17, 2016 (d/e 13).

---

1 The FDCPA requires that a debt collector send a Dunning letter within five days of the initial communication in connection with the consumer, which includes the following information: (1) the amount of the debt; (2) the name of the creditor owed; (2) a statement that if the debtor does not dispute the validity of the debt within 30 days, the debt will be presumed valid; (4) a statement that if the consumer notifies the debt collector in writing within 30 days that the debt is disputed, the debt collector will obtain and mail to the consumer verification of the debt or a copy of a judgment against the consumer; and (5) a statement that, at the consumer's request within 30 days, the debt collector will provide the consumer with the name and address of the original creditor.  See 15 U.S.C. § 1692g(a).

On May 31, 2016, Plaintiff moved for a Default Judgment with responses due by June 17, 2016 (d/e 14). Upon receiving no response from Defendant, this Court entered a Default Judgment on June 27, 2016 in favor of the Plaintiff and against Defendant, with damages to be determined after a hearing (d/e 16).

*Summary of Allegations*

Plaintiff is a "consumer," as defined by the FDCPA (15 U.S.C. § 1692a) and the ICFA (815 ILCS 505/1). Defendant is a "debt collector," as defined by FDCPA. Defendant's actions in this case were "part of the conduct of any trade or commerce," as defined in the ICFA. Defendant is in the business of purchasing and collecting delinquent consumer debts, including a debt purportedly owed by Plaintiff. Defendant regularly uses the mail and/or telephone to collect, or attempt to collect, delinquent debts.

On or around November 13, 2015, Plaintiff began receiving collection calls to her cellular phone. During one of the initial calls, Plaintiff spoke with Jonathan Chambers, who informed Plaintiff that Mr. Chambers worked for Defendant and that he was collecting an overdraft fee from US bank (the purported debt). Mr. Chambers stated that a lawsuit had been filed against Plaintiff and that

Defendant could obtain a judgment against her.  However, neither Defendant nor any other party had initiated legal proceedings against Plaintiff with respect to the purported debt.  During this phone call, Plaintiff was subjected to various threats regarding what would happen if she did not pay the debt and Mr. Chambers offered, on behalf of Defendant, to settle the debt.  Mr. Chambers did not disclose that Defendant was a debt collector and that any information gained in the conversation would be used for the purposes of debt collection.

Defendant made several additional attempts to contact Plaintiff.  Plaintiff called Defendant on November 24, 2015.  Plaintiff first spoke with a representative of Defendant, Jay Martinez.  Mr. Martinez did not disclose that Defendant was a debt collector and that any information it gained would be used for the purpose of debt collection.  Mr. Martinez provided Plaintiff with information regarding the purported debt and sought payment.  Mr. Martinez also told Plaintiff that she had the right to an attorney but that an attorney could not represent her in small claims court.

Because this information conflicted with Mr. Chambers' informing Plaintiff that a lawsuit had been filed, Plaintiff asked to

speak with Mr. Chambers.  Mr. Chambers again used various threats in an attempt to get Plaintiff to pay the purported debt.  Mr. Chambers also offered to email Plaintiff documentation regarding the purported debt and a payment agreement.  Plaintiff received an email generated from Defendant through DocuSign.  The email contained an attachment which outlined terms of a payment agreement.  Nowhere in the attachment does Defendant identify itself as a debt collector.  <u>See</u> Ex. A to Compl. (d/e 1-1).

*Prove Up Hearing*

On July 7, 2016, Plaintiff filed a Motion in Support of Default Judgment on Sum Certain (d/e 18) requesting $1,000 in statutory damages under the FDCPA, $3,000 in punitive damages under the ICFA, and $5,828 in attorney's fees and costs.  In support of Plaintiff's claims for damages, Plaintiff provided an itemization of attorney's fees and costs, receipts for costs incurred, and an affidavit from counsel stating that the fees were reasonable.

On July 18, 2016, this Court held a prove-up hearing for Plaintiff to present any additional evidence to support her claim for damages.  Defendant was not present at the hearing.  Plaintiff's

counsel was present on behalf of Plaintiff, but Plaintiff was not present.

Plaintiff's counsel presented no evidence of actual damages caused by Defendant's violations and conceded that Illinois law prohibited an award of punitive damages absent a showing of actual damages. Plaintiff's counsel testified, as to fees and costs, that he has litigated FDCPA cases for seven years, filing over 200 complaints. Counsel further testified that he had previously been approved for a rate of $375 in the Northern District of Illinois; however, he lowered his rate to $350 for practice in this Court. Counsel also testified that he further accounted for the potential difference in the local rate by billing fewer hours than he had worked in the litigation and by rounding the hours spent down to the nearest half-hour.

Counsel also answered a number of the Court's questions. Counsel explained the itemized charges that were not clear to the Court from the exhibits. Counsel also confirmed that his hours were recorded using a software program. Finally, Counsel stated that he had no evidence that Plaintiff looked for regional counsel prior to retaining counsel from Chicago.

The Court expressed reservation about approving counsel's hourly rate of $350. The Court stated that local attorneys with substantial experience litigating in other fields, such as insurance defense, charged hourly rates between $90 and $150. The Court also noted that in a previous case where counsel was brought in from Chicago, the Court lowered the attorney's rate from the proposed $445/hour to $125/hour. To provide additional evidence of the regional rate, the Court took testimony from Attorney Doug Quivey. Mr. Quivey is currently an Assistant Federal Public Defender in this district. Prior to that employment, Mr. Quivey worked in private practice in this district for over twenty years. Mr. Quivey testified that, based on his experience, the hourly rate charged for claims of this nature locally ranged from $100-200.

## II. ANALYSIS

The Court's entry of a default judgment establishes a defendant's liability, but the victorious plaintiff must still prove up damages. Domanus v. Lewicki, 742 F.3d 290, 303 (7th Cir. 2014). A defendant is liable, by virtue of its default, for the claims raised in the complaint and, accordingly, "well-pled allegations…relating to liability" are taken as true; however, allegations "relating to the

amount of damages" are typically not taken as true. Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012). That being said, the Court has "broad latitude" in determining damages, specifically when the defendant's conduct or failure to defend contributes to the Court's difficulty in making a determination. Domanus, 742 F.3d at 303 ("even speculation has its places in estimating damages").

### a. An Award of $1,000 in Statutory Damages is Appropriate.

The FDCPA allows for a statutory damage award of up to $1,000. See 15 U.S.C. § 1692k(a)(2)(A). The same provision of the FDCPA, subsection (b), provides that the Court shall consider the following factors when deciding what damages to award under subsection (a)(2)(A): "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."

Proof of actual damages is not required in order to recover statutory damages. See Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998). Plaintiff is not entitled to separate awards of statutory damages for each alleged violation; however, the number of violations affecting the plaintiff is to be considered under the "frequency and persistence" prong. See Smith v. Greystone

Alliance, LLC, 772 F.3d 448, 449 (7th Cir. 2014) (statutory damage cap is per proceeding not per violation); see also Matmanivong v. National Creditors Connection, Inc., 79 F.Supp.3d 864, 876 (N.D. Ill. 2015) (number of violations is relevant to determining frequency and persistence of violations); Hartman v. Meridian Fin. Servs., Inc., 191 F.Supp.2d 1031, 1046 (W.D. Wis. 2002) (same); Dewey v. Associated Collectors, Inc., 927 F.Supp. 1172, 1175 (W.D. Wis. 1996 (only the violations of which plaintiff was the victim are relevant to frequency and persistence prong).

 The first factor, "frequency and persistence of the noncompliance" does not weigh strongly in favor of a maximum award. Although the Court adjudged Defendant liable of violating the FDCPA, Plaintiff did not present any additional evidence regarding the frequency and persistence of the noncompliance. Plaintiff alleges that Defendant violated the FDCPA on four separate occasions: during two separate phone calls, once when sending a settlement agreement without identifying itself as a debt collector, and, generally, by never sending a Dunning letter. Plaintiff also alleges that Defendant made "several additional attempts to contact Plaintiff." See Compl. (d/e 1) at 2-3.

Plaintiff's well-pleaded allegations clearly support a finding that the defendant violated the statute four times. Defendant made threats and misstatements during each phone call that violated both the FDCPA. Further, Plaintiff clearly alleges that Defendant failed to identify itself as a debt collector in the settlement agreement and that Defendant failed to send a Dunning letter, both violations of the FDCPA. Further, Plaintiff provides documentary support for her allegation regarding the Defendant's failure to identify itself as a debt collector in the settlement agreement. See Ex. 1 to Pl. Compl. (d/e 1-1).

However, Plaintiff's additional allegation that Defendant made "several additional attempts to contact Plaintiff" cannot be taken as evidence of the frequency and persistence of the violations. Plaintiff does not allege that these "additional attempts" comprised violations of the FDCPA. Therefore, the Court may only consider the four afore-mentioned violations.. As a result the first factor does not necessarily favor a full $1000 award. See Grubbs v. Andrews & Cox P.C., 13-1936, 2015 WL 5613325 (S.D. Ind. Sept. 22, 2015) (basing a $100 statutory damage award partly on a

finding that the frequency and persistence of the noncompliance was minimal).

The second factor, however, the nature of the noncompliance, weighs strongly in favor of a maximum award. Defendant is liable for multiple violations of the FDCPA: (1) using threats and misrepresentations in connection with debt collection on two occasions; (2) failure to identify oneself as a debt collector on several occasions; and (3) failure to send a Dunning letter. Defendant's committing multiple violations of the statute supports a substantial award. See Martin v. Financial Recovery Center, Inc., 10-109, 2010 WL 4318830 (N.D. Ind. Oct. 20, 2010) (finding that defendant's multiple violations of the statute supported the full $1000 in statutory damages upon awarding a default judgment).

The third factor, whether the violation was intentional, also weighs strongly in favor a maximum award. Defendant's actions support a finding of intent. Defendant told Plaintiff in the first phone call that a lawsuit was filed against her; however, in the second phone call, Defendant told Plaintiff that no lawsuit had been filed. Defendant also threatened Plaintiff and made clearly false statements, such as advising Plaintiff that she could not be

represented in any lawsuit filed.  See Martin, 2010 WL 4318330 (inferring Defendant's intent from the nature of the misrepresentations made).  Further, any inability of Plaintiff to provide additional evidence of Defendant's intent is the result of Defendant's failure to represent itself in this lawsuit.  See Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc., 03-5311, 03-4844, 2007 WL 2580491, *3 (N.D. Ill. Sept. 10, 2007) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1365 (7th Cir. 1996) (when awarding statutory damages the court must consider whether "the defendant's wrong has caused the difficulty of proof of damages").  Therefore, the evidence of Defendant's intentional acts supports a maximum award.

Therefore, based on the nature of Defendant's four violations and the Court's recognition of Defendant's intent, the Court finds that Plaintiff is entitled to the full $1000 in statutory damages.

   b. **<u>Punitive Damages Are Not Permitted.</u>**

The FDCPA does not permit punitive damages; however, Defendant was also found liable under the ICFA, which permits punitive damages.  See 15 U.S.C. § 1692k (punitive damages are

not on the list of permitted damages under the act); see also Keeling v. Esurance Ins. Co., 660 F.3d 273, 275 (7th Cir. 2011) ("Punitive damages are available under…the Illinois Consumer Fraud and Deceptive Business Practices Act."). Specifically, under Illinois law, punitive damages may be awarded in a fraud action where "the false representations are wantonly and designedly made." Gehrett v. Chrysler Corp., 379 Ill.App.3d 162, 179 (Ill. App. Ct. 2d 2008). However, punitive damages are *not* available unless a plaintiff shows "actual damage." See Petty v. Chrysler Corp., 343 Ill.App.3d 815, 825 (Ill. App. 1st 2003); Kirkpatrick v. Strosberg, 385 Ill.App.3d 119, 133 (Ill. App. Ct. 2d 2008) (quoting 815 ILCS 505/10a) ("any person who suffers actual damage may be awarded punitive damages"). In this case, Plaintiff does not claim that she is entitled to actual damages. Further, Plaintiff neither submitted documentary evidence of actual damages in her motions nor provided testimony regarding actual damages at the prove up hearing. As a result, punitive damages are not awarded in this case.

   c. **Plaintiff Is Entitled to $3,803 in Attorney's Fees and Costs.**

The FDCPA makes an award of fees and costs "mandatory." See 15 U.S.C. § 1692k(a)(3); see also Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995). To determine the fees to be awarded in an FDCPA case, the Court begins with the lodestar method and then considers other factors, such as the degree of success obtained. See Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997). Under the lodestar method, the Court multiplies the hours reasonably expended by the reasonable hourly rate. See Pickett v. Sheridan Health Care, 664 F.3d 632, 640-43 (7th Cir. 2011).

The Court finds that Plaintiff has provided sufficient evidence to support her claim for $728 in costs. Plaintiff attached receipts for all costs to her Motion for Default Judgment (d/e 14). The Court also finds that the hours submitted by Plaintiff are reasonable. The Court reviewed the itemized invoice with Plaintiff's counsel at the hearing, and Plaintiff's counsel sufficiently explained the appropriateness of the time spent on this litigation. Finally, the Court also finds that the $75/hour rate charged for paralegal hours is reasonable. However, the Court finds that the rate of $350/hour for Plaintiff's lead counsel is not reasonable considering the rate

charged for similar work in this district.  Therefore, Plaintiff's claim for attorney's fees and costs is not granted in its entirety.

Plaintiff's counsel testified that he usually charged a rate of up to $375 and that he lowered his rate to $350 due to the difference between practicing in the Northern District of Illinois and the Central District of Illinois.  Plaintiff's counsel also testified that he further reduced his fee by rounding his billed hours down to the nearest half-hour and by refraining from billing for all of the hours dedicated to this case.  However, based upon the testimony of Doug Quivey and the Court's experience in other cases, Plaintiff's counsel's rate is nearly double the local rate.  See Blum v. Stenson, 465 U.S. 886 (1984) (the reasonable rate is to be judged according to "the prevailing market rates in the relevant community").

In certain instances, a court may find that the "community" extends beyond that of local attorneys and, therefore, an out-of-town attorney's rate may be reasonable.  See Jeffboat, LLC v. Director, Office of Workers' Compensation Programs, 553 F.3d 487 (7th Cir. 2009).  Specifically, when the case concerns a subject matter requiring "highly specialized" attorneys and the "the market for legal services in that area is a national market," then the Court

may award fees that would be deemed reasonable in the national market. Id. at 490. However, if the Court finds that local counsel could have provided equally adequate legal services, the Court has the discretion to lower the rate accordingly. Id.

In this case, Plaintiff has presented no evidence that she attempted to obtain local counsel. Further, the Court finds that the litigation at hand could have been competently handled by local counsel. Therefore, Plaintiff is not entitled to an increased award based on her decision to obtain counsel from a different market. However, the Court acknowledges that Plaintiff's counsel charged a rate that is in line with what he charges other clients and that counsel made some effort to moderate his fees. Therefore, the Court finds that a rate of $200/hour is reasonable.

As a result, Plaintiff is awarded $3,803 in attorney's fees and costs

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion in Support of Default Judgment on Sum Certain (d/e 18) is GRANTED IN PART and DENIED IN PART. IT IS HEREBY ORDERED that Plaintiff is

awarded $1,000 in statutory damages, no punitive damages, and $3,803 in attorney's fees and costs.

ENTER: August 3, 2016.

                                                s/ Sue E. Myerscough
                                                SUE E. MYERSCOUGH
                                                UNITED STATES DISTRICT JUDGE